ment of any judgment that may be recovered against him; all within five days after service of the order herein; and in default thereof that the order be reversed with costs and disbursements and the motion denied with costs.

JENKS, J., concurs; WOODWARD and RICH, JJ., in result.

———————————    o

ROONEY v. BROGAN CONST. CO.

(Supreme Court, Appellate Division, Second Department.   June 22, 1906.)

1. MASTER AND SERVANT—ASSUMPTION OF RISK—NATURE.
      The rule that an employé assumes the obvious risks of his employment does not rest wholly on his implied agreement, but on an independent act of waiver, evidenced by his continuing in the employment with knowledge of the facts.
      [Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 538–543, 583.]

2. SAME—RELATION OF PARTIES—PARTY ENTITLED TO ASSERT THE DEFENSE OF ASSUMPTION OF RISK.
      An owner of a building in process of construction requested an independent contractor, having nothing to do with the keeping of fires in stoves to prevent the plaster from freezing, to put on one of his men to do the work, and the owner would pay therefor.  Pursuant to the arrangement, the independent contractor directed one of his employés to do the work. His entire time was occupied in doing it, and the owner paid for it.  Held, that the relations between the owner and the employé were such that the owner was entitled to invoke the doctrine of the assumption of risk by the employé.

3. TRIAL—INSTRUCTIONS—WITHDRAWAL OF ISSUES.
      Where, in an action for injuries received by falling down an elevator shaft in a building in process of construction, the evidence showed that plaintiff knew of the existence of the shaft and the absence of barriers, but did not know of the danger incident to crossing the uneven floors in the performance of his work, and the danger of tripping, an instruction directing a verdict against the employé if he had knowledge of the existence of the unguarded shaft was erroneous, because withdrawing from the jury the issue whether he appreciated the danger incurred while walking on the uneven floors.
      [Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, §§ 613–623.]

Appeal from Trial Term, Kings County.

Action by Margaret Rooney, administratrix of John Rooney, deceased, against the Brogan Construction Company.   Fom a judgment for defendant, and from an order denying a motion for a new trial, plaintiff appeals.   Judgment and order reversed, and new trial granted.

See 95 N. Y. Supp. 1.

Argued before HIRSCHBERG, P. J., and WOODWARD, RICH, and MILLER, JJ.

Gilbert D. Lamb, for appellant.
I. R. Oeland, for respondent.

RICH, J.   Upon the former appeal (107 App. Div. 258, 95 N. Y. Supp. 1) we held that the question of assumption of risk by plaintiff's intestate was one of fact for the jury.   The rule of the assumption of ob-

vious risks does not rest wholly upon the implied agreement of an employé, but on an independent act of waiver, evidenced by his continuing in the employment with a full knowledge of all the facts. Drake v. Auburn City Railway Co., 173 N. Y. 466, 66 N. E. 121. The evidence established that, when the deceased first went to work upon the building being erected by defendant, he was an employé of Conroy Bros., an independent contractor, and while working for them he was employed in making mortar in the cellar. As the building progressed, it became necessary to keep fires in portable stoves upon the different floors, to prevent the newly put on plaster from freezing. This work Conroy Bros. had nothing to do with; it was not included in their contract, and they had no duty to perform in any manner connected with it. A foreman of the defendant and a couple of Italian laborers in its employ performed this labor for the defendant until a few days before the accident resulting in the death of plaintiff's intestate, when a labor union delegate refused to permit these nonunion workmen to longer continue the work, and upon protest to the Conroy Bros. firm was referred to the defendant as the employer of the men and owner of the building. Thereupon Charles Brogan, defendant's president, requested said firm to put one of their men upon the work, and the defendant would pay for his services. Upon this request and under this agreement, Conroy Bros. directed the plaintiff's intestate to thereafter do the work. He was engaged in doing the defendant's work at the request of the defendant, who paid for it. His entire time was occupied in doing this work, and he did no work for Conroy Bros. after he commenced attending to the stoves. There can be no doubt but that his relations with the defendant were such that the doctrine of assumption of risk may properly be invoked by the latter, and was a question of fact for the jury, as was held when this case was before us on the former appeal.

Upon the second trial the learned trial justice charged the jury that the plaintiff was entitled to recover unless they found, first, that her intestate assumed the risk; or, second, that his death was the result of, or contributed to by, his own negligence. Upon the first proposition the jury were instructed:

"Did the deceased know that these barriers were not there? If he did, then the law is that he accepted the risk of their absence, and there can be no recovery in this case. * * * But if workmen, knowing that these barriers are not there, go to work around these shafts on the floors, then the law is that they assume the risk of the absence of the barriers, and there can be no recovery. * * * So I put to you the question, did this defendant know, have knowledge, and see that this barrier eight feet high around this shaft was not there? * * * Did he that night, when walking along within two feet of it, as the proof is, in passing along the whole length of this shaft, see that there was a shaft there, and that there was no barrier? If he did, and went so close to it, he took the risk of slipping and falling into it, and he cannot recover. If he saw and knew it was there, and chose to be there, the law is that he should have kept far enough away not to take the risk of slipping and falling into it. * * * I charge you that, if he knew that open shaft was there, the law required him to go farther away and keep in a place of safety, and that if he did know it, and that still he went along by it and took the risk of falling into it, then you must find a verdict for the defendant. * * * The defendant is liable unless the deceased assumed the risk, unless the deceased saw that it was not there either that day or the day before or that night, and, knowing it not to be

there, nevertheless went so close to this opening that he would go into it if he made a slip. * * * If you find that he did know of the absence of a barrier and knew of the shaft, then you find for the defendant. * * * Of course, if the deceased knew the shaft was there, he must necessarily have known that this guard eight feet high was not there, because he could not look at the shaft without seeing whether the guard was there. If you find that his employment around there was such that he did not know, then you cannot impute to him that he assumed the risk of this employment; but if he did know it, then you must impute to him the assumed risk. That is the law, and you are to take the law from me, and find what is the fact under the law, and render your verdict accordingly."

The uncontroverted evidence established that the deceased knew of the existence of the shaft extending from the basement to the top floor of the building. The court charged that, having this knowledge, the deceased necessarily knew that the guard was not there, and, "if you find that he did know of the absence of a barrier and knew of the shaft, then you find for the defendant." The jury found for the defendant, "but censure the defendant for failure to erect safeguards in compliance with the law."

We think that this instruction took from the jury the question which it was their sole province to determine, to wit, the appreciation by the deceased of the danger he was incurring, which must have existed before he could be held to have assumed the risk of his employment to such an extent as to preclude a recovery by the plaintiff. To bring a case within the operation of the maxim of "volenti non fit injuria," there must be found to exist on the part of the person injured knowledge of all the facts making his work dangerous, or an opportunity to acquire such knowledge by the exercise of ordinary care and prudence. Appreciation of the danger and voluntary action thereon and the existence of each of these elements must in this action be determined as a question of fact by the jury.

The deceased had been employed in attending to the stoves about a week. There is no direct or conclusive evidence that he had ever been upon the ninth floor of the building after it had reached the condition in which it was at the time of the accident. There were no floor boards laid on that story. The sleepers which would form the foundation for the flooring were in place, and the space between them had been filled with dark colored ashes. The filling was irregular, the ashes in places coming to the top of the sleepers and in others not, and it was in a place where the filling was below the top of the sleeper that plaintiff's foot caught upon that portion of the sleeper projecting above the filling, causing him to fall into the shaft opening. It does not appear when the sleepers were laid or filling done on this floor. It might have been done that very day, and the jury might have found that the existing irregular condition of the walking surface was the cause of his falling. This condition constituted one of the elements of danger to a person attempting to walk upon its surface of which the deceased was not shown to have had knowledge. It does not appear whether the floor boards had been laid in the other stories of the building. There were guards to the shaft on some of the floors of the building, as testified to by Borzone, a witness called by the defendant. It was dark at the place of the injury. From the evidence the jury would have been justified in

finding that, although the deceased knew of the existence of the shaft and the absence of barriers on some of the floors of the building, he did not appreciate the danger to the work he was engaged in at the time and place of the injury, viz., that of crossing the uneven floor with the stove, and tripping upon one of the sleepers projecting above its surface, and for that reason did not assume the risk, and that plaintiff was not, under the rules of law governing the case, precluded from recovering. The determination of this element of the question of the assumption of risk by the deceased, as matter of law, and its consequent withdrawal from the consideration of the jury by the trial court, constitute reversible error.

The plaintiff is entitled to have the question of the existence of all the essential elements necessary to establish the assumption of risk by her intestate submitted to a jury as a question of fact, and determined by them.

The judgment and order must be reversed, and a new trial granted; costs to abide the event. All concur.