**UNITED STATES v. ST. PAUL–MERCURY INDEMNITY CO.**

No. 10501.

United States Court of Appeals
Third Circuit.

Argued Dec. 18, 1951.

Decided Jan. 25, 1952.

Sidney L. Wickenhaver, Philadelphia, Pa. (C. Brewster Rhoads, Philadelphia, Pa., Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., on the brief), for appellee.

Melvin Richter, Washington, D. C. (Holmes Baldridge, Asst. Atty. Gen., Gerald A. Gleeson, U. S. Atty., Thomas J. Curtin, Asst. U. S. Atty., Philadelphia, Pa., Paul A. Sweeney, George F. Foley, Attorneys of Department of Justice, and Ira P. Miller, Attorney, Department of Treasury, all of Washington, D. C., on the brief), for appellant.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an appeal by the Government from an adverse judgment in its suit for the balance of unpaid customs duties and internal revenue taxes on a warehouse entry bond which had been filed for the warehouse entry of certain imported whiskey. After issue had been joined a stipulation of facts was filed. Following that, both sides moved for summary judgment on the pleadings and the stipulation of facts. The Court allowed the defense motion and denied that of the Government, D.C., 96 F.Supp. 870.

According to the agreed facts, on July 22, 1943, one Leff filed with the Collector of Customs at the Port of Philadelphia, Warehouse Entry #5613 covering 129 barrels of whiskey which on June 22, 1943 had been imported from Cuba. With the entry there was filed a Warehouse Entry Bond (Customs Form 7555) on which Leff was principal and appellee was surety. On August 16, 1943, prior to the liquidation of the entry and pursuant to Customs Regulations, Leff filed two warehouse withdrawals for transportation in customs bond, forwarding 25 of the barrels of whiskey to the Port of New York and 104 of the barrels of whiskey to the Port of Baltimore. At that time the customs duties and internal revenue taxes upon the whiskey were estimated at a total of $48,879.92. Upon the arrival of the whiskey at New York and Baltimore estimated duties and taxes were paid and the whiskey released from customs custody prior to the liquidation of the entry.

No liquidation of the entry was made prior to January 24, 1947. On that date such liquidation was posted at the Philadelphia customhouse. By that liquidation there remained a balance of unpaid duties amounting to $1,427.68 and a balance of unpaid internal revenue taxes of $3,685.86, making a total unpaid balance of $5,113.54. The Government's suit was for that unpaid balance.

The Court below decided that the proper interpretation of the bond called for liquidation of the entry within three years of the date of the importation of the whiskey. The Trial Judge considered that Sections 557 (as amended)[1] and 559[2] of the Tariff Act of 1930 supported this view. The consequent holding was that since the entry had not been liquidated within that three years the appellee surety was released from liability under its bond. We think this was error.

The pertinent condition of the bond reads:

"If within 3 years from the date of original importation the above-bounden principal shall pay to the collector of customs the full amount of duties, taxes, charges, and exactions legally due on the said articles, which the collector is required to collect, *and shall pay, on demand by the collector, any other duties, taxes, charges, and exactions found legally due on the articles subsequent to withdrawal;* * * * .

\* \* \* \* \* \*

1. 46 Stat. 744, as amended by 52 Stat. 1077, 1087, 1088, 19 U.S.C.A. § 1557.

2. 46 Stat. 744, 19 U.S.C.A. § 1559.

"Then this obligation to be void; otherwise to remain in full force and effect." (Emphasis supplied.)

Under the Customs Regulations [3] imported merchandise can be warehoused for three years and even though the entry has not been liquidated, may be withdrawn at any time within that period upon payment of the estimated duties and taxes. That outlined procedure was followed exactly in connection with the whiskey here involved. The whiskey was withdrawn within three years of its importation. At the time it was withdrawn the entry had not been liquidated; consequently only an estimate could be made of the customs duties and internal revenue tax upon it. This was done and the amount of that estimate was paid. It was impossible to pay the final duties and taxes as these had not been ascertained at that time and could not be until the statutory liquidation of the entry had been accomplished. The second portion of the bond condition is to pay, *on the collector's demand*, any *other* duties and taxes found legally due *after withdrawal*. That language would seem to specifically apply to the present situation. The entry was later liquidated and the exact amount of the customs duties and taxes arrived at. The estimated figure fell short of this which left an unpaid balance. There is no dispute regarding the accuracy of the final calculation and the Government alleges in its complaint that payment of the unpaid balance was demanded of the principal and the surety prior to suit. As we see it, under the second clause of the bond's condition, that unpaid balance must be paid before the bond is voided and the surety released. The construction urged by appellee would have the three year limitation in the first clause of the condition apply also to the payment on demand by the collector of any other duties and taxes found to be legally due after withdrawal. Such construction would distort the plain meaning of the clause and would, for no apparent reason, leave the Government without remedy against the surety on this type of unpaid duties and taxes.

It has been the Treasury Department's settled policy for more than twenty years last past to insist upon retention of liability of the surety on such a bond as the one in suit until final ascertainment and payment of the customs duties and taxes upon the particular merchandise. The Department's 1943 Customs Regulations,[4] in effect when this bond was executed, provided under Section 8.32 with respect to the above quoted bond condition: " * * * Under the first condition of the warehouse entry bond, the sureties on the bond shall be held liable for the payment of duties and customs charges not paid by the principal on the bond, *whether such duties and charges are finally ascertained before the merchandise is withdrawn from custody or thereafter."* (Emphasis supplied.)

Under Section 557 of the 1930 Tariff Act, as amended [5] the owner may withdraw the merchandise referred to in Section 8.32, above quoted, " * * * at any time within three years from the date of importation, * * *" and since Section 8.32 specifically sets out that the surety on the bond will still be liable for unpaid charges in the event such charges are not finally ascertained until after the merchandise is withdrawn and since the owner under 557 has three years to withdraw the merchandise, it follows that under the regulations there is no three year limitation attaching to the surety liability.

█ Section 8.32 is actually a reissuance of T.D. 49658, approved July 18, 1938, which in turn had amended Article 318 of the 1937 Customs Regulations. That amendment had been as to language and had not affected the substance of the article. Article 318 had been a reissuance of Article 313 of the 1931 Customs Regulations. The latter article had incorporated the earlier T.D. 43010, approved October 25, 1928. There is not the slightest inference in any of this prior history of 8.32 of an intention

---

3. Section 8.40(a) of the 1943 Customs Regulations; 19 CFR Section 8.40(a) (1949 ed.).

4. 8 Fed.Reg. 8212, 8222; now 19 CFR Section 8.32 (1949 ed.).

5. 46 Stat. 744, as amended by 52 Stat. 1077, 1087, 1088, 19 U.S.C.A. § 1557.

by the Department to place a time restriction on liquidation of an entry.[6] And as the Government rightly points out, appellee, engaged in this specialized bond business, can be assumed to have had notice of the Department's long existing interpretation of the here pertinent condition of the bond. See Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10. Cf. Bowers Hydraulic Dredging Co. v. United States, 211 U.S. 176, 188, 29 S.Ct. 77, 53 L.Ed. 136.

Leff, as the owner-importer, was, of course, responsible for the duties and taxes on the whiskey. The bond was an additional protection to the Government. It was a required obligation "for the protection of the revenue", Sec. 623, Tariff Act of 1930, 19 U.S.C.A. § 1623. Prior to the withdrawal of the whiskey the Government was protected not only by the presence of the merchandise itself but by the personal and bond liability of the owner and the bond responsibility of the surety. Under appellee's theory if an entry is not liquidated until more than three years after the importation date of the particular merchandise and meanwhile the merchandise has been withdrawn, the Government's sole recourse for any final duties and taxes thereafter ascertained is confined to the personal responsibility of the owner which by that time may well have become valueless. Under the same theory of three year limitation of surety liability, and again assuming no liquidation the Government would be in at least no better position if the merchandise had been left in the warehouse beyond the three year period without payment of duties or taxes. The merchandise could be sold by the Government under Section 559 of the Tariff Act of 1930, 19 U.S.C.A. § 1559, but, again, in the event of a deficit it would have only the doubtful liability of the owner. It

would have lost its substantial and required protection of the bond. Such a course of dealing, fantastically impractical and without justification, could hardly be ascribed to the realistic customs and tax collecting branch of the Treasury Department concerned.

The Section of the Tariff Act of 1930 applicable to the instant problem is neither 557 nor 559 as urged by appellee. Section 557 concerns the right of the owner of the warehoused merchandise to withdraw it at any time within three years from its importation date upon payment of the duties and charges as stated in the Section. Section 559 declares that merchandise bearing any unpaid duties or charges and remaining in bonded warehouse beyond the three year period shall be regarded as abandoned to the Government and sold under Treasury regulations. These sections have no reference at all to liquidation of the entry. The section which does control is 505, 19 U.S.C.A. § 1505, which reads: "The consignee shall deposit with the collector, at the time of making entry, unless the merchandise is entered for warehouse or transportation, or under bond, the amount of duty estimated to be payable thereon. Upon receipt of the appraiser's report and of the various reports of landing, weight, gauge, or measurement the collector shall ascertain, fix, and liquidate the rate and amount of duties to be paid on such merchandise as provided by law and shall give notice of such liquidation in the form and manner prescribed by the Secretary of the Treasury, and collect any increased or additional duties due or refund any excess of duties deposited as determined on such liquidation."

As seen, 505, which meticulously outlines the necessary liquidation steps, does not impose any fixed period of limitation upon the liquidation.[7] Indeed the contrary is

6. United States v. Campbell, D.C.S.D.N.Y. 1882, 10 F. 816 and United States v. DeVisser, D.C.S.D.N.Y. 1882, 10 F. 642, early bond cases involving the application of the rule of strictissimi juris to the individual sureties, have no real bearing here. The opinions in those decisions were written by the same judge and certain dicta from those opinions is urged by appellee as supporting its contention of a three year limit to its liability on the bond in suit. Aside from everything else the Campbell and DeVisser bonds did not contain the all important clause of the bond before us which reads: " * * * and shall pay, on demand by the collector, any other duties, taxes, charges, and exactions found legally due on the articles subsequent to withdrawal; * * *."

7. Prior legislation, from which Section 505 derives, does not contain any provision

true since liquidation must wait on the appraiser's report and since there is no time limit for the statutory appraisement. Tariff Act of 1930, Section 500, 19 U.S.C.A. § 1500. Appraisement can be and is often delayed for meritorious reasons. Exhaustive investigation of imported merchandise is one common reason. Even after final appraisement has been accomplished, appeal from the appraisement to the Customs Court and a resulting trial de novo is a matter of right, Section 501, Tariff Act of 1930, 19 U.S.C.A. § 1501, and appellant is entitled to exhaust all appellate steps prior to statutory liquidation. It is apparent that the liquidation process, though moving with all possible speed, might well be unable to reach finality within three years of the date of importation.

The last point for our consideration is the suggestion by appellee that its answer alleges as an additional ground of defense that no demand was made of Leff, the principal, for the amount of duties and taxes claimed in this suit as provided for in the bond.[8]

■ Paragraph 8 of the complaint states that "demand has been made upon both the principal and surety for the payment * * *." That allegation is assumed to be true for the purpose of passing upon the defense motion for summary judgment allowed below.[9] At oral argument, the Government, amplifying the prayer of its brief, asked not only for reversal of the judgment below but that we direct judgment to be entered in favor of the Government. The fact that the defense contests the Government's allegation in its complaint of compliance with the provision of the

bond regarding demand for payment on the principal is enough of itself to defeat this request.

The judgment of the District Court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

---

limiting liquidation to within three years of importation. See Section 21, Act of March 2, 1799, 1 Stat. 627, which was substantially reenacted as part of Section 2621, Revised Statutes. Section 2621 was replaced without express repeal by Section 13 of the Customs Administrative Act of 1890, 26 Stat. 131, 136–137. Section 13 was reenacted in Section 28, Subsection 13 of the 1909 Tariff Act, 36 Stat. 11, 99, 100, and in Section III, M of the 1913 Tariff Act, 38 Stat. 114, 186, 187. It was replaced by Section 504 of the 1922 Tariff Act, 42 Stat. 858, 967, where the procedure for liquidation was

given the form in which it now appears in the Tariff Act of 1930 as above quoted.

8. Demand on the surety appellee is admitted by the answer.

9. Harris v. Railway Express Agency, Inc., 10 Cir., 178 F.2d 8; Furton v. City of Menasha, 7 Cir., 149 F.2d 945, certiorari denied, 326 U.S. 771, 66 S.Ct. 176, 90 L.Ed. 466; Zell v. American Seating Co., 2 Cir., 138 F.2d 641, reversed on other grounds, 322 U.S. 709, 64 S.Ct. 1053, 88 L.Ed. 1552; Lichten v. Eastern Air Lines, Inc., D.C., 87 F.Supp. 691, affirmed 2 Cir., 189 F.2d 939.